IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| TRI-CON, INC. and STARR SURPLUS LINES INSURANCE COMPANY,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 1:20-CV-535-MAC-CLS<br>§<br>§<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. Tex. Local R. CV-72. Pending before the court is Defendant Union Pacific Railroad Company's Motion for Summary Judgment. (Doc. #67.) After review, the undersigned recommends granting in part and denying in part the motion.

**I.   Background**

This case involves a dispute over water damage to Plaintiff Tri-Con Inc.'s ("Tri-Con") property that occurred during the flooding from Hurricane Harvey and Tropical Storm Imelda. Plaintiffs Tri-Con and Starr Surplus Lines Insurance Company[1] ("Starr") filed their original petition in state court on November 4, 2020, alleging claims for violations of the Texas Water

---

[1] Starr reached a settlement with Defendant and filed an unopposed Motion to Dismiss (doc. #92) on July 10, 2023. The motion was granted on July 28, 2023 (doc. #99), dismissing Starr and its claims against Defendant. Tri-Con is the only plaintiff remaining in this suit.

1

Code, negligence, nuisance, and trespass.  (Doc. #4 at ¶¶ 20-28.)  This case was removed to federal court by Defendant Union Pacific Railroad Company ("Union Pacific") on December 11, 2020, based on diversity jurisdiction.  (Doc. #1.)

Tri-Con is a distributor of petroleum and lubricant products and owns a terminal and headquarters facility located at 7076 West Port Arthur Road, Beaumont, Texas [hereinafter "the Property"].  (Doc. #4 at ¶ 9.)  Located near the Property is a Union Pacific rail line featuring drainage culverts that allow surface water to be detained, collected, or impounded.  (Doc. #4 at ¶¶ 11-13.)  Between June 2015 and January 2017, Union Pacific replaced the existing 30-inch culverts with significantly larger 48-inch culverts.  (Doc. #4 at ¶ 15.)  In August 2017, the Property sustained significant damage from severe flooding during Hurricane Harvey; in September 2019, the Property was again damaged from severe flooding from Tropical Storm Imelda.  (Doc. #4 at ¶¶ 17-18.)  Tri-Con alleges that the 48-inch replacement culverts caused the damage to the Property during the flooding in Hurricane Harvey and Tropical Storm Imelda as they significantly increased the volume and flow rate of impounded surface water discharged from the culverts.  (Doc. #4 at ¶ 19.)

On April 28, 2023, Defendant filed a Motion for Summary Judgment seeking dismissal of Tri-Con's claims on the following grounds:

1. Some or all of Tri-Con's claims are barred by the statute of limitations—either:

    a. all claims are barred because the injury to the Property is a permanent rather than temporary injury, meaning the statute of limitations began to accrue more than two years before Plaintiff filed suit; or

    b. the claims relating to Hurricane Harvey are untimely regardless of whether the court determines the injury is permanent or temporary;

2. All claims should be dismissed because Tri-Con's loss was caused by an Act of God;

3. All claims should be dismissed because Tri-Con cannot establish the necessary damages regardless of whether the court finds the injury is permanent or temporary, as either:

   a. if the injury is permanent, Tri-Con cannot establish damages related to the loss in market value; or

   b. if the injury is temporary, Tri-Con's damages are still limited to the fair market value under the economic feasibility rule, and Tri-Con cannot establish damages related to the loss in market value; and

4. The nuisance and negligence claims should be dismissed because Tri-Con cannot establish that Defendant owed it a legal duty or that it breached a duty.

(Doc. #67 at 7-8, 25-26.)

## II.   Legal Standard

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a).  A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986).  A fact is material when it is relevant or necessary to the ultimate conclusion of the case.  *Id.* at 248.  The movant's burden is only to point out the absence of evidence supporting the nonmovant's case.  *Chambers v. Sears, Roebuck and Co.*, 428 Fed. App'x 400, 407 (5th Cir. 2011) (citing *Duffy v. Leading Edge Products Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).

Once the moving party has carried its burden of demonstrating the absence of a genuine dispute of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255.  However, the non-movant may not rest on mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial.  *Toney v. United States*, 273 Fed. App'x 384, 385-86 (5th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248-49)).  The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence.  *Lindquist v. City of Pasadena*, 669 F.3d 225, 232-33 (5th Cir. 2012) (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)).

Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment.  *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Hugh Symons Group*, 292 F.3d at 468 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).  The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim.  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citing *Forsyth*, 19 F.3d at 1537)).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Infante v. Law Office of Joseph Onwuteaka, P.C.*, 735 Fed. App'x 839, 843 (5th Cir. 2018) (citation omitted); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992); F<small>ED</small>. R. C<small>IV</small>. P. 56(c)(3) ("[T]he court need consider only the cited materials.").  If the nonmoving party fails to make a showing sufficient to establish the existence

of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III.   Discussion

#### A.   Statute of Limitations

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised." *Graham v. Pirkey*, 212 S.W.3d 507, 512 (Tex. App.—Austin 2006, no pet.) (citations omitted). Here, the statute of limitations on each of the claims alleged is two years. TEX. CIV. PRAC. & REM. CODE § 16.003; *Pope v. John Kiella Homes*, No. 07-06-0146-CV, 2008 WL 1903332, at *2 (Tex. App.—Amarillo Apr. 30, 2008, no pet.) ("The [plaintiffs'] claims against Kiella for nuisance, trespass, and violations of Water Code § 11.086 all have a limitations period of two years.") (citations omitted); *Buerger v. Clifton*, No. 4:18-CV-78, 2021 WL 1061182, at *1 (E.D. Tex. Mar. 19, 2021) ("A two-year statute of limitations applies to negligence claims.") (citations omitted). When the limitations period began to accrue for these claims, however, depends on whether the injury is temporary or permanent. *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 478 (Tex. 2014) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 275 (Tex. 2004)). "A permanent nuisance claim accrues when injury first occurs or is discovered; a temporary nuisance claim accrues anew upon each injury." *Pope*, 2008 WL 1903332, at *2 (citing *Schneider*, 147 S.W.3d at 269).

Tri-Con's Property flooded during Hurricane Harvey, with the hurricane lasting from August 17, 2017, to September 1, 2017. (Doc. #67 at 10.) The Property flooded again during Tropical Storm Imelda, which began on September 17, 2019, and ended September 19, 2019.

5

(Doc. #67 at 12.) Tri-Con filed suit on November 4, 2020. (Doc. #4.) If Tri-Con's injury is deemed permanent, then all claims are barred by the statute of limitations. However, if Tri-Con's injury is deemed temporary, then the claims relating to Tropical Storm Imelda are timely, and the claims relating to Hurricane Harvey are barred by the statute of limitations unless a tolling doctrine applies.

                1.  *Temporary or Permanent?*

In *Gilbert*, the Texas Supreme Court reformulated the definitions of temporary and permanent injuries as follows:

> An injury to real property is considered permanent if (a) it cannot be repaired, fixed, or restored, or (b) even though the injury can be repaired, fixed, or restored, it is substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated. Conversely, an injury to real property is considered temporary if (a) it can be repaired, fixed, or restored, and (b) any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty.

449 S.W.3d at 480.

Generally, whether an injury is temporary or permanent is a question of law for the court to decide. *Id.* at 481. However, when the facts are disputed and must be resolved to determine whether the injury is temporary or permanent, "the court, upon proper request, must present the issue to the jury, relying on the definitions" provided in *Gilbert*. *Id.*

As to the first element of a temporary injury, Tri-Con has presented competent summary judgment evidence from which (at minimum[2]) a reasonable jury could conclude that the Property can be "repaired, fixed, or restored." For example, Tri-Con's president, Elias Sarkis, stated in his deposition that the Property is "a facility that can be rebuilt," there are "a lot of assets that are

---

[2] Defendant does not dispute that the Property can be repaired, as demonstrated by its statement in the Motion for Summary Judgment that "Tri-Con's real property can be repaired" (doc. #67 at 15) and the lack of contrary evidence submitted to rebut this position.

remaining on the facility that are usable," the location of the facility is important for the operation of the company, and rebuilding the facility is feasible because Tri-Con is "not starting from scratch." (Doc. #81-1 at 14.) Additionally, Tri-Con's construction expert, Kyle Workman, has provided unrebutted expert opinions regarding "the reasonable and necessary cost to reconstruct and repair" the Property. (Doc. #81-2 at 8-18, 26-30.)

As to the second element, the summary judgment evidence submitted by the parties makes clear that there are questions of material fact as to whether Tri-Con's injury is temporary or permanent. These questions must be resolved by the jury. Specifically, the central disputed fact in the temporary-versus-permanent distinction is whether it is "substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated," or, in contrast, whether "any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty." *Gilbert*, 449 S.W.3d at 480. Defendant claims that this dispute is settled, pointing to (1) Sarkis' statements indicating he anticipates that flooding will recur, (2) Tri-Con's statement in their complaint that the flooding is "of a recurring nature" and "it is only a matter of time before . . . [the Property] will be flooded again,"[3] and (3) Tri-Con's request for relief in the form of a permanent injunction.[4] (Doc. #67 at 15-16.)

---

[3] This portion of Tri-Con's complaint is offered at the end of the complaint in support of its request for a permanent injunction and, in full, reads, "[i]n addition to, or in the alternative, as a direct and proximate result of Union Pacific's conduct as described herein, Tri-Con has suffered and is suffering irreparable harm through the creation of a nuisance that is of a recurring nature. Furthermore, irreparable injury to real or personal property is threatened as a result of the issues described herein. There have been two significant flood events at the Property since 2017, and it is only a matter of time before another major rain event occurs and Tri-Con's Property will be flooded again." (Doc. #4 at ¶ 32.) As Tri-Con correctly points out in its response (doc. #81 at 16), these statements are "expressly plead[ed] in the alternative" in support of its request for an injunction, and "it is well established that parties may plead inconsistent or alternative theories and no technical form is required." *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2016 WL 98751, at *27 n. 17 (E.D. Tex. Jan. 8, 2016). The undersigned does not consider this as undisputed evidence that Plaintiff admits the injury is permanent.

[4] Defendant cites no authority for its position that Tri-Con's request for permanent injunctive relief establishes that this court must, as a matter of law, deem the injury permanent and/or that such a request essentially "converts" an

In response, Tri-Con (1) points to the fact that the Property did not flood during at least four other major hurricanes and storms that occurred since 2017[5] and (2) notes that Sarkis' statements proffered by Defendant that he anticipates future flooding does not sufficiently establish that the flooding will "repeatedly, continually, and regularly recur" as defined by the temporary-versus-permanent distinctions in *Gilbert*. (Doc. #81 at 12-13.) Tri-Con has sufficiently demonstrated that a reasonable jury could find that any anticipated recurring of the flooding would be "only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty."

Based on the competent summary judgment evidence, the undersigned finds that Defendant is not entitled to summary judgment on the ground that the injury is permanent, making all of Plaintiff's claims are untimely. Material disputed facts underlie the determination of whether the injury is temporary or permanent. The undersigned is further guided by the principles that (1) all reasonable inferences must be drawn in Plaintiff's favor as the non-moving party, and (2) the accrual of the statute of limitations cannot be determined as a matter of law if reasonable minds could differ about the conclusion to be drawn from the facts. *Gutierrez v. Ethicon, Inc.*, 535 F.

---

otherwise temporary injury into a permanent one. Indeed, the caselaw is contrary to such a position. *See, e.g.*, *Huynh v. Blanchard*, No. 12-20-00198-CV, 2021 WL 3265549, at *7 (Tex. App.—Austin, July 30, 2021) (permitting a trial court to grant the plaintiff a permanent injunction after the jury found for the plaintiff and determined the injury was temporary, as "the issuance of a permanent injunction is a discretionary decision for the judge after the case has been tried and the jury discharged") (citations omitted); *see also Schneider*, 147 S.W.3d at 286; *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 610 (Tex. 2016).

[5] In his deposition (doc. #81-1 at 8, 62:22-63:24) Sarkis states that the Property has only flooded three times since 1977. Two instances of flooding occurred during Hurricane Harvey and Tropical Storm Imelda, and the third instance occurred in the early 2000s. The court takes judicial notice of four of the five storms Plaintiff mentions (doc. #81 at 14) that occurred since 2017 in addition to Hurricane Harvey and Tropical Storm Imelda. These storms are all reported in the National Weather Service and caused flooding in the relevant area: Hurricanes Laura (2018), Hurricane Delta (2018) Tropical Storm Beta (2018), and Hurricane Nicholas (2021). For Tropical Storm Cindy (2017), however, the National Weather Service only reports brief flooding across the road between Sabine Pass and Port Arthur. Without additional evidence from Plaintiff, the undersigned cannot consider Tropical Storm Cindy to have caused major flooding in the relevant area for the purposes of this motion.

Supp. 3d 608, 620 (W.D. Tex. 2021) (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)).

Additionally, as Plaintiff notes (doc. #81 at 15), other courts have indicated both in dictum and in holding that injuries from sporadic flooding as a result, at least in part, of heavy rain can be characterized as temporary. *See, e.g.*, *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264 272 (Tex. 2004) ("A nuisance is also temporary if it is occasional, intermittent or recurrent, or sporadic and contingent upon some irregular force *such as rain*.") (emphasis added); *Scott v. S2S Domain Waco Associates*, LLC, No. 10-20-00133-CV, 2021 WL 5639086, at *8 (Tex. App.—Waco Dec. 1, 2021, pet. denied) (citing *Schneider*, 147 S.W.3d at 272) (same) (citation omitted); *Spring Branch Wildlife Pres. v. Dow Chem. Co.*, No. 14-17-00539-CV, 2018 WL 4868852, at *5 (Tex. App.—Houston Oct. 9, 2018, no pet.) ("[T]emporary injuries are those which are not continuous, but instead are sporadic and contingent upon some irregular force *such as rain*.") (emphasis added) (citation omitted); *Pulaski v. Republic of India*, 212 F. Supp. 2d 653, 656 (S.D. Tex. 2002) ("Although rain is a persistent condition in Houston, the nuisance suffered by the [plaintiffs] is temporary because it is contingent on sporadic rain.").

Defendant has not established as a matter of law that the injury is permanent rendering all of Plaintiff's claims untimely.

2. *Economic Feasibility Exception*

In the alternative, Defendant argues that "even if the Court concluded that the injury was temporary . . . the economic feasibility exception applies, which requires the injury to be deemed permanent as a matter of law based on Tri-Con's damages figures," citing *Gilbert*, 499 S.W.3d at 481, in support. (Doc. #67 at 17.) This argument fails for two reasons.

"[The economic feasibility] exception applies when the cost of required repairs or restoration exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible." *Gilbert*, 449 S.W.3d at 481. The general calculation to determine the diminution in a property's market value is "the difference in the reasonable market value of the property immediately before and immediately after the injury." *Crosstex*, 505 S.W.3d at 611 (citation omitted).[6]

First, as Plaintiff notes (doc. #67 at 19), the only market value evidence in the summary judgment record is Joshua Wood's appraisal report, which opines on the reasonable market value of the Property at a single point in time—that is, before Tropical Storm Imelda. (Doc. #67-13 at 3.) Defendant has not presented any evidence of (1) the market value immediately before Hurricane Harvey, (2) the market value immediately after Hurricane Harvey, or (3) the market value immediately after Tropical Storm Imelda. Without such evidence, Defendant has not met its initial summary judgment burden of demonstrating that the cost of repair exceeds the diminution in value to the disproportionally high degree required to apply the economic feasibility exception.

Second, according to the unrebutted evidence of Plaintiff's construction expert, Kyle Workman, the cost to repair the Property is approximately $1,378,904.[7] (Doc. #67-12 at 5.) Joshua Wood estimates the fair market value of the Property before Tropical Storm Imelda as

---

[6] The Texas Supreme Court in *Crosstex* also states that "when the damage results from an ongoing condition rather than a single event that results in a permanent nuisance, courts apply a 'more flexible' rule." *Crosstex*, 505 S.W.3d at 611 (citations omitted). Defendant has not argued that a "more flexible rule" should be applied nor articulated what a more flexible rule, if applied, would entail, thus the undersigned need not address this exception to the general damage calculation.

[7] Defendant argues that Kyle Workman estimated the cost of repairs to be $1,597,077.36, stating that this figure was "calculated by taking the total repair costs and subtracting the betterment tasks ($1,644,167.45-$47,090.09)." (Doc. #67 at 17 n.9.) It appears to the undersigned, however, that Workman's "Final Costs Net of Previous Work & Betterment" is $1,378,904. (Doc. #67-12 at 5.) Viewed in the light most favorable to Plaintiff, the lower figure should be used here.

10

approximately $1.2.[8] At best, the summary judgment evidence viewed in the light most favorable to Plaintiff demonstrates that the repair cost exceeds the market value before Tropical Storm Imelda[9] by approximately $178,000 or 14.38%. Courts have found the requisite disproportionality where the excess in cost was significantly higher than the figures presented here. For example, a court applied the economic feasibility exception where the repair cost was more than six times the value of the property. *N. Ridge Corp. v. Walraven*, 957 S.W.2d 116, 119-120 (Tex. App.—Eastland 1997, pet. denied). Another court applied the economic feasibility exception where the repair cost was over $600,000, nearly triple the $55,000 lease value, $55,000 rental income value, and $117,608 tax value combined. *Long v. Faenas Transp., LLC*, No. 1:19-CV-200, 2020 WL 4677686, at *6 (E.D. Tex. June 23, 2020). Defendant has not provided any caselaw, and the undersigned has not located any, to support that this degree of excess warrants applying the economic feasibility rule.

As such, even if Defendant had submitted sufficient evidence to compare the cost of repair to the Property's diminution in value, Defendant has not established that the cost of repair exceeds the diminution to such a disproportionate degree that the economic feasibility rule must be applied. Defendant is not entitled to summary judgment on the ground that the economic feasibility rule requires the court to deem Tri-Con's injury as permanent as a matter of law (and therefore rendering Plaintiff's claims untimely).

---

[8] Wood provides multiple estimates using different generally accepted calculation models. The estimates range from $1.2 million to $1.45 million. Again, viewed in the light most favorable to Plaintiff, the lower figure should be used here.

[9] As the property first flooded two years prior, during Hurricane Harvey, it is possible that the market value before Hurricane Harvey was higher than Wood's estimate of the value before Tropical Storm Imelda.

### 3. *Hurricane Harvey Claims*

Defendant argues that, regardless of the court's characterization of the injury as temporary or permanent, Plaintiff's Hurricane Harvey claims are nonetheless untimely, as the flooding from that storm occurred in 2017, but Plaintiff filed suit over three years later in 2020. In response, Plaintiff argues that the discovery rule applies to the Hurricane Harvey claims, rendering them timely.[10]

The discovery rule is "'a very limited exception' to accrual when an injury is both inherently undiscoverable and objectively verifiable." *Schneider*, 147 S.W. 3d at 279 (citation omitted). Even when the discovery rule applies, accrual still occurs upon notice of injury, regardless of whether the plaintiff does not yet know the full extent of the damages or the chances of avoiding them. *Id.* (citation omitted). "An injury is not inherently undiscoverable when it could be discovered through the exercise of reasonable diligence." *Mustafa*, 650 S.W.3d 760, 764 (Tex. App.—Houston 2022, pet. denied) (citing *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)). Moreover, to determine whether an injury is "inherently undiscoverable," the inquiry is whether the *type* of injury is generally discoverable by the exercise of reasonable diligence, not whether the *particular* injury at issue was discovered. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) ("Although the particular injury in *Altai* may not have been discovered, it was the type of injury that generally is discoverable by the exercise of reasonable diligence."); *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 ("This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable.").

---

[10] Plaintiff does not argue any other tolling exception applies. The undersigned therefore does not address any other tolling doctrines.

To maintain its Hurricane Harvey claims under the discovery rule, Plaintiff must establish there is a genuine dispute of material fact as to whether Plaintiff could not have discovered the injury until on or after November 4, 2018—two years before Plaintiff filed suit. Tri-Con does not dispute that it became aware of the flooding to the Property from Hurricane Harvey in 2017 when it first occurred. Instead, Tri-Con argues that the discovery rule should apply because it did not discover the alleged *cause* of the flooding—the culverts—until after Tropical Storm Imelda in 2019. (Doc. #81 at 21-23.) This argument fails for two reasons.

First, Texas courts have "specifically rejected the contention that the cause of action does not accrue until the *cause* of the injury to the property is discovered." *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 61 (Tex. App.—Texarkana Apr. 16, 2004, pet. dism'd) (emphasis added) (collecting cases) (citing *Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 272-73 (Tex. App.—El Paso 2001, pet. denied); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 437 (Tex. App.—Fort Worth 1997, pet. denied); *Yancy v. City of Tyler*, 836 S.W.2d 337, 339 (Tex. App.—Tyler 1992, writ denied)); *see also PPG Indus. V. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004) (citation omitted) ("[T]he discovery rule does not linger until a claimant learns of actual causes and possible cures. Instead, it tolls limitations only until a claimant learns of a wrongful injury. Thereafter, the limitations clock is running, even if the claimant does not yet know[] the specific cause of the injury.").

Second, the summary judgment evidence establishes that Tri-Con *was* aware, or at least strongly suspected, that the culverts were the cause of the injury. Sarkis—Tri-Con's president—states the following in an email dated October 12, 2017:

> "[A] [f]ew months prior to Harvey when we had a heavy rain we noticed that the water was crossing the Hwy from the area where the two 48'' culvert[sic] where[sic] installed this year. Please let me know what is the next step with restricting the flow from the property across the railway tracks."

13

(Doc. #67-6 at 4.)  Doug Cannat[11] responds on October 26, 2017, stating that he is "considering the Hurricane Harvey experience an off the charts event" and he "[does not] believe restricting the culverts is the solution."  (Doc. #67-6 at 3.)  Cannat then provides Sarkis with the contact information of "Duke Energy," who is "very involved with the drainage of that side [of the railroad tracks]."  (Doc. #67-6 at 3.)  Based on this email conversation, the undersigned finds that no reasonable jury could conclude that the president of Tri-Con did not know or at least strongly suspect that the culverts were the cause of the flooding during Hurricane Harvey.  Tri-Con may argue that Cannat's response cast doubt on Sarkis' apparent belief that the culverts caused the flooding, but (1) that does not negate Sarkis' subjective awareness of the injury or that the culverts were a possible cause of the flooding as early as October 12, 2017, and (2) the exercise of reasonable diligence would have made Tri-Con sufficiently aware of the cause of the flooding at this time.

In sum, under Texas caselaw, the discovery rule is inapplicable due to Tri-Con's undisputed subjective awareness of the flooding when it occurred in 2017, as the injury was not inherently undiscoverable.  Tri-Con's assertion that it was not aware that the culverts were the cause of the flooding is not relevant, and, even if it were, the summary judgment evidence conclusively demonstrates otherwise—that Tri-Con discovered, or should have discovered by exercising reasonable due diligence, the cause of the flooding prior to November 4, 2018.  The undersigned finds that the discovery rule does not apply to Plaintiff's Hurricane Harvey claims.  Defendant is entitled to summary judgment on the ground that the Hurricane Harvey claims are untimely, and these claims should be dismissed.

---

[11] Doug Cannat is presumably one of Tri-Con's contacts at TxDOT with whom it consulted, but Tri-Con does not specify Cannat's identity.

14

B. Act of God

Defendant alleges that the flooding was caused by an Act of God and not the increased size of the culverts. To be insulated from liability under this defense, Defendant must establish that (1) the loss was due directly and exclusively to an act of nature and without human intervention, and (2) no amount of foresight or care which could have been reasonably required of the defendant could have prevented the injury. *McWilliams v. Masterson*, 112 S.W.3d 314, 320 (Tex. App.—Amarillo 2003, pet denied) (citation omitted). Additionally, the act of nature must be unusual or unprecedented, but it need not be the sole, greatest, or harshest violent act ever experienced. *Id.* (citation omitted). Rather, "it need only be so unusual that it could not have been reasonably expected or provided against." *Id.* (citation omitted).

Defendant's expert in flood climatology, Hal Needham, opines that it is "extremely likely that the Tri Con(sic) site flooded during Hurricane Harvey (2017) and Tropical Storm Imelda (2019) due to the extraordinary magnitude of these events. (Doc. #67-7 at 1.) Needham further opines that these were 1000-year rain events and that such extraordinary events are exceeding rare. (Doc. #67-7 at 1.) Additionally, Defendant's expert in hydrology, Kristina Cydzik, concluded that the Property would have flooded approximately to the same depth if the culverts were the original 30 inches or even if no culverts existed at the location whatsoever. (Doc. #67-15 at 41-44, 49.)

In response, Tri-Con points to the opinions of its hydrology and causation expert Wayne Chang,[12] whose opinions controvert those of Defendant's experts. For example, Change opines that "[t]he two 30-inch CMP culverts would limit the flows to a level that can be conveyed within the ditch and roadway. Thus, the replacement of the two 30-inch CMP culverts with the two 48-

---

[12] To date, Defendant has not challenged the admissibility of Chang's opinions under Rule 702. Defendant only challenged Tri-Con's "general cross-designation" of experts designated by Starr, former co-plaintiff. (Doc. #63.) Tri-Con was granted leave (doc. #99) to properly designate these witnesses, including Chang, and has since done so (doc. #98).

15

inch CMP culverts directly caused approximately 2.5 to 3-feet of flood inundation of Tri-Con during Hurricane Harvey and Tropical Storm Imelda." (Doc. #81-5 at 8.) Additionally, Daniel Dotson, Tri-Con's civil engineering expert, provides opinions on the impact of the 48-inch culverts on the ability of the drainage system to handle certain amounts of runoff water.[13]

As Plaintiff correctly notes (doc. #81 at 29), "it is not the role of the court to make credibility determinations, or to weigh evidence when ruling on a motion for summary judgment," *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017). Which of these conflicting expert conclusions are "correct" is for the jury, not the court, to decide. The undersigned finds that Tri-Con has carried its summary judgment burden as the non-movant and has demonstrated there is a genuine dispute of material fact as to whether the flooding was caused by the culverts or whether the flooding was an Act of God. Accordingly, Defendant is not entitled to summary judgment on the ground that the flooding was caused by an Act of God.

### C. Nuisance and Negligence Claims

Tri-Con alleges a negligent-nuisance claim and a negligence claim. Both claims require the essential elements of negligence: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Crosstex*, 505 S.W.3d at 607 (citation omitted). Defendant argues that these claims fail because Defendant did not owe a legal duty to Plaintiff, and, in the alternative, Defendant did not breach any duty.

#### 1. *Legal Duty*

Defendant does not dispute that there is a legal duty to not wrongfully burden Tri-Con's Property with "surface water." (Doc. #67 at 26.) Rather, Defendant argues that the water at issue

---

[13] Pursuant to the undersigned's July 31, 2023, Order (doc. #100) granting in part and denying in part Defendant's Motion to Exclude Dotson, these types of opinions are admissible. Dotson is only prohibited from opining that the culverts were the but-for cause of the flooding. (Doc. #100 at 8-9.)

16

in this suit is not "surface water" within the meaning of section 11.086 of the Texas Water Code. However, to establish a Texas Water Code § 11.086 claim, the water at issue need not *remain* "surface water" if it overflows and damages the property of another; rather, it need only be "surface water" at the time of the unlawful diversion or impounding of the water and the damaging of another's property. *Golden Corral Corp. v. Noble Austin Apartments L.L.C.*, No. 03-19-00463-CV, 2021 WL 2878565, at *4 (Tex. App.—Austin July 9, 2021, no pet.). The water at issue in this suit satisfies this standard, and Plaintiff has cited caselaw in support.

Furthermore, as Plaintiff notes (doc. #81 at 29-30), Texas courts have long held that adjoining landowners, such as Defendant, have a legally enforceable obligation to not wrongfully burden adjoining properties with stormwater runoff in greatly increased, concentrated, or unnatural quantities. *See, e.g.*, *Bunch v. Thomas*, 49 S.W.2d 421, 423 (Tex. 1932) ("[I]t it is the generally recognized rule both of the civil and the common law that a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter."); *Jefferson Cnty. Drainage Dist. No. 7 v. Hebert*, 244 S.W.2d 535, 538 (Tex. App—Austin 1951, writ ref'd n.r.e.) ("Parties may not collect surface water into an artificial canal and cast it in increased and unnatural quantities upon the lands of another to the damage or injury of the owner."); *Langford v. Kraft*, 498 S.W.2d 42, 46–47 (Tex. App.—Beaumont 1973, writ ref'd n.r.e.) (holding that developers that increased both the quantity and the velocity of the runoff water and caused it to pass off onto adjoining land in increased quantities violated governing statute and common law); *Vien v. Del Buono*, No. 10-09-00318-CV, 2010 WL 5117248, at *3-4 (Tex. App.—Waco Dec. 15, 2010, pet. denied) ("[S]urface waters are waters from precipitation which migrate across land until they evaporate, are absorbed, or reach a water course. . . . Under the common law, adjoining landowners have interrelated rights and duties

17

with regard to surface water."); *Good River Farm, LP v. Martin Marietta Materials, Inc.*, No. 1:17-CV-1117-RP, 2023 WL 2904577, at *7 (W.D. Tex. Apr. 11, 2023) (discussing the duty of a landowner to control the runoff of surface water collected by unnatural features on its property).

### 2. *Breach of Duty*

For the reasons discussed *supra* § III.B, Plaintiff has demonstrated there is a genuine dispute of material fact as to whether the culverts caused the flooding. Plaintiff has carried its burden in demonstrating a genuine dispute that Defendant breached a legal duty owed to Plaintiff necessary to maintain its negligence and nuisance claims. Defendant is not entitled to summary judgment on this ground.

### D. Damages

Finally, Defendant included in its "Statement of the Issues" that one issue for the court on summary judgment is whether Tri-Con can "establish damages related to loss in market value of real property." (Doc. #67 at 8.) Defendant does not, however, make such an argument in the body of the motion. The undersigned need not address an argument that a party does not brief. *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 446 (5th Cir. 2021) (citation omitted) ("[W]e need not address such inadequately briefed arguments here."). However, to the extent a finding on this summary judgment ground is necessary, the undersigned notes that this argument was premised on the undersigned finding that the injury was permanent. The issue of whether the injury is temporary or permanent in this suit must be determined by the jury for the reasons discussed above. Defendant would therefore not be entitled to summary judgment on this ground.

## IV. Conclusion

The undersigned's findings are summarized as follows: (1) the issue of whether the injury is temporary or permanent in this suit must be determined by the jury as there are underlying

material factual disputes; (2) Defendant has not met its burden of demonstrating the economic feasibility exception applies; (3) the discovery rule does not apply to the Hurricane Harvey claims; (4) there is a genuine dispute of material fact as to whether the flooding was caused by an Act of God; and (4) Defendant owed a legal duty to Plaintiff, and there is a genuine dispute of material fact as to whether Defendant breached that duty.

Based on these findings, Plaintiff's Hurricane Harvey Claims are untimely and should be dismissed. Defendant's Motion for Summary Judgment should be granted as to the Hurricane Harvey claims. However, all other grounds for summary judgment should be denied.

## V. Recommendation

For the foregoing reasons, the undersigned recommends **GRANTING IN PART** and **DENYING IN PART** Defendant's Motion for Summary Judgment (doc. #67). Defendant's Motion for Summary Judgment (doc. #67) should be **GRANTED** as to the Hurricane Harvey claims, and those claims should be **DISMISSED** from this suit as untimely. Defendant's Motion for Summary Judgment (doc. #67) should be **DENIED** on all other grounds.

## VI. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 4th day of August, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE